## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

KENDRA COVILL,

     Plaintiff,

vs.

UNUM LIFE INSURANCE COMPANY
OF AMERICA,

     Defendant.

No. 23-cv-19-LTS-MAR

**REPORT AND RECOMMENDATION
ON APPEAL OF ADMINISTRATIVE
DECISION**

_____

### TABLE OF CONTENTS

Page

*I.* *INTRODUCTION*................................................................... 2

*II.* *JURISDICTION OF VENUE* ........................................... 2

*III.* *BACKGROUND*................................................................. 3

    *A.* *The Parties*.............................................................. **3**

    *B.* *The Plan*.................................................................... **3**

    *C.* *Factual and Procedural Background* ............................. **4**

    *D.* *Covill's Pertinent Medical Evidence* ........................... **19**

    *E.* *Covill's Vocational Consultant*................................... **22**

    *F.* *Covill's Statement* ..................................................... **23**

1

IV.    ANALYSIS ..................................................................................24

       A.    Parties' Arguments .................................................................24

       B.    Standard of Review .................................................................26

       C.    Application .............................................................................27

V.    CONCLUSION .............................................................................32

## I.    INTRODUCTION

The matter now before me is Plaintiff Kendra Covill's appeal from Defendant Unum Life Insurance Company of America's ("Unum") administrative decision denying long-term disability insurance benefits under an insurance policy issued pursuant to the Employee Retirement Income Security Act, 29 U.S.C. Sections 1001, *et. seq.* ("ERISA"). (Doc. 1.) The Honorable Leonard T. Strand, United States District Court Judge, referred this matter to me for a Report and Recommendation.

For the following reasons, I respectfully recommend that the Court **remand** this matter to the Plan Administrator for further consideration and development of the issues related to the definition of "light work" found in the eDOT, including whether such designation includes frequent sitting, and to further address why and how the eDOT definition applies to Covill. Such development of the record will allow the Court to properly review Unum's determination of Covill's eligibility for long-term disability insurance benefits.

## II.    JURISDICTION OF VENUE

Under ERISA, this Court has jurisdiction to review Unum's denial of Plaintiff's claim. 29 U.S.C. § 1132(e)(1). Venue is appropriate in the Northern District of Iowa because the alleged breach occurred in this District. *See* 29 U.S.C. § 1132(e)(2)

Case 1:23-cv-00019-LTS-MAR   Document 17   Filed 07/16/24   Page 2 of 32

(providing that an action may be brought, inter alia, in the district court where the breach took place).

## III. BACKGROUND

### A. The Parties

Plaintiff Kendra Covill is a resident of Coggon, Linn County, Iowa. (Doc. 1 at 2.) At all times relevant to this action, Covill was employed by Dental Health Partners, located in Cedar Rapids, Iowa. (*Id.*) Covill was enrolled in a long-term disability ("LTD") insurance policy through her employer Dental Health Partners. (*Id.*)

At all times relevant to this litigation, Unum was an authorized insurance company engaged in business in the State of Iowa. (*Id.*)

### B. The Plan

The LTD Plan provides that Unum determines whether a claimant meets the Plan's definition of disability and Unum issues payments upon approval of a claim. (Doc. 10-1 at 106.) The Plan defines disability as follows:

> You are disabled when Unum determines that:
>
> - you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness or injury**; and
> - you have a 20% or more loss in your **indexed monthly earnings** due to the same sickness or injury.
>
> You must be under the regular care of a physician in order to be considered disabled.

(*Id.*) Under the Plan, "material and substantial duties" are defined as duties that:

> - are normally required for the performance of your regular occupation; and
> -cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Unum will consider you able to perform that requirement if you are working or have the capacity to work 40 hours per week.

(*Id.* at 122.)  "Regular Occupation" is defined as:

> The occupation you are routinely performing when your disability begins. Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location. . . .

(*Id.* at 123.)

## C.  *Factual and Procedural Background*

Prior to surgery in August 2019, Covill had been experiencing radiating pain in her pelvic area, and, on August 27, 2019, Covill underwent a hysterectomy and bilateral salpingectomy.  On September 22, 2019, Covill underwent a laparoscopy for removal of pelvic abscess and adhesiolysis.  Covill was ultimately terminated from her position at Dental Health Partners because she was unable to recover from her surgeries and pain symptoms.  Her last day of work at Dental Health Partners was August 26, 2019.

Unum received Covill's claim for LTD benefits on November 25, 2019.  On March 23, 2020, Unum denied Covill's claim for LTD benefits.[1]  Covill appealed Unum's decision.  On February 16, 2022, Unum upheld its decision to deny Covill's claim.

In the initial decision, dated March 23, 2020, Unum concluded that no LTD benefits were payable because the information provided to Unum did support the conclusion that Covill had "been continuously disabled through the elimination period." (Doc. 10-4 at 73.)  Unum noted that "[b]ased on our review, we have determined that your conditions do not rise to a level of severity that would prevent you from performing the material and substantial duties of your occupation through and beyond the elimination period noted above."  (*Id.* at 74.)

---

[1] On April 8, 2020, Unum upheld its initial decision from March 23, 2020, noting that new information provided by Covill did not change the initial decision.  (Doc. 10-4 at 108-112.)

4

In the appeal decision, dated February 16, 2022, Unum determined that Covill could "perform the duties of [her] occupation" and "was not disabled during the elimination period according to the policy and benefits were not payable." (Doc. 10-12 at 123.) Unum noted that its Vocational Rehabilitation Consultant reviewed Covill's occupational demands, as performed in the national economy, and determined that her occupational demands included the following:

- Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently and/or a negligible amount of force constantly to lift, carry, push, pull or otherwise move objects;
- Frequent sitting;
- Occasional standing, walking, and stooping;
- Making judgements and decisions:
- Dealing with people;
- Attaining precise set limits, tolerances, and standards; and
- Memory, concentration, and attention.

(*Id.* at 124.)

Physicians employed by Unum "conducted two medical reviews" and determined that the medical evidence "did not support that [Covill's] conditions rise to a level of severity that would preclude her from performing her occupational demands beyond the elimination period, which would have been reached on February 22, 2020." (*Id.*) Specifically, Unum determined that, "based on the available medical information . . . Covill was able to perform her occupational demands and she did not satisfy the required 180-day Elimination Period under her Long-Term Disability policy." (*Id.*)

In support of its appeal decision, Unum noted that it had forwarded the appeal to its Vocational Rehabilitation Consultant, who:

noted, in part, the DOT [("Dictionary of Occupational Titles")] relies on the category of work which includes standing and walking that is not specific to the occupation part of a broad range of requirements. The Enhanced Dictionary of Occupational Titles [("eDOT")] is updated quarterly and separates the definition of Light work into a strength

5

requirement (lifting, carrying, pushing, or pulling) and measures sitting, standing, and walking separately. The additional vocational information does not alter the occupational identification or associated demands from the [initial] vocational reviews conducted by the Benefits Center.

(*Id.*)[2]

Unum also noted that it had forwarded the appeal to an appeals physician, who is Board Certified in Physical Medicine and Rehabilitation and Electrodiagnostic Medicine with an Additional Subspecialty Certification in Pain Medicine. This physician opined that, considering Covill's diagnoses both singularly and in aggregate, "the file information is insufficient to support an inability to sustain the occupational demands outlined above." (*Id.* at 125.) Specifically, this physician opined that:

> [D]espite complaints of abdominal and pelvic pain with painful trigger points on examination, diagnostics fail to identify a condition that would support severe, impairing pain. Ms. Covill's clinical presentation serially documents that she is not in any distress, which is inconsistent with severe impairing pain.
>
> The diagnostic findings of a right ovarian cyst would not explain Ms. Covill's clinical presentation. Although Dr. Olson recommended release of adhesions and removal of her normal left ovary, a second surgical opinion with Dr. Mazur opined that this procedure would not improve her pain. An August 24, 2020, office visit by Dr. Olson indicated that she was going to pursue surgery in the next few days. A November 10, 2020, statement from Ms. Covill noted that she had surgery scheduled on November 9, 2020. Although she was planning to have surgery in November 2020, reports indicated she did not have surgery due to COVID-19. However, file information does not support this contention because as of October 12, 2020, Ms. Covill indicated she was not going to have surgery and there was no rescheduling of the surgery recommended by Dr. Olson.

---

[2] "The eDOT is published by the Economic Research Institute and is distinct from the Department of Labor's Dictionary of Occupational Titles." *Snapper v. Unum Life Ins. Co. of America*, 662 F.Supp.3d 804, 833 n.14 (N.D. Ill. 2023).

(*Id*.)  The physician also noted that "Dr. Schlenk indicated Ms. Covill had exaggerated pain mannerisms with minimal palpation and she did not have sustained response to multiple abdominal wall and pelvic floor trigger point injections."  (*Id*.)

Next, the physician addressed Covill's diagnostic testing and opined that:

Covill's lumbar spine MRI would not support conditions that would prevent occasional standing and walking or other activities noted above.  Ms. Covill's lumbar spine condition is not severe to warrant lumbar epidural steroid injections, electrodiagnostic studies, or spinal cord stimulation. There have been no consistent myotomal motor changes, dermatomal sensory changes, or reflex changes to support lumbar radiculopathy and the rare file information noting positive straight leg raises fails to identify the symptoms provoked by the straight leg raises or the ang[le] required to provoke symptoms.

The appeals physician noted the pelvis x-ray and hip MRIs and opined Ms. Covill has labral tears and femoroacetabular impingement (FAI) in the hips, but she ambulates with normal gait without assistive devices.  She had corticosteroid injections in the hips, but she has not been referred for surgery.  These conditions would not preclude occasional standing and walking particularly given her reassuring hip range of motion and her serial lack of antalgic gait on examinations.

Bilateral knee pain was noted and considered but x-rays and MRIs fail to identify severe pathology expected to cause impairment.  Ms. Covill has not had cortisone or viscus injections and has not had recent referral to PT for knee pain.  Physical examinations fail to identify severe knee findings and Ms. Covill ambulates without assistive device.

(*Id*. at 125-26.)

Additionally, the physician noted that, "[a]lthough Ms. Covill has intermittently elevated blood pressure, there are no consistent severe blood pressure readings that would preclude outlined activities or that would not respond to medications."  (*Id*. at 126.)

The physician also addressed Covill's issues with severe pain and noted that "despite reports of severe, impairing pain, Ms. Covill was able to travel seven hours to

7

Michigan in December 2019. She has four children and file information documents in February 2020 that she was cleaning a lot because her kids had been sick. Dishes, cleaning, laundry 'that is probably why it is hurting so bad.'" (*Id.*) The physician noted that:

> Covill has consistent reports of chronic pain, however, the file documentation regarding the location of the pain is variable. On serial clinical examinations pain is at times in the abdominal wall, at times in various locations within the pelvic floor. Her symptoms have been attributed to a variety of diagnoses including her remaining ovary, adhesions, myofascial pain, and pelvic floor muscle dysfunction. There has not been documentation of a single unifying diagnosis to explain her pain symptoms and her pain reports have not been accompanied by other file information such as abnormal gait, abnormal testing, or other consistent physical examination findings to support her consistently high level of pain reports.

(*Id.*)

Additional information, including medical statements and medical records from treating doctors and an updated Vocational Rehabilitation Report, were provided to Unum for the appeal. This additional information was reviewed by the physician and "did not change the prior opinion because Ms. Covill has chronic pelvic pain complaints of unclear etiology." (*Id.*) The physician explained that:

> Dr. Olson has provided a variety of possible etiologies as referenced by you. Ms. Covill has reported limited therapeutic benefit from interventions. Her pursuit of invasive injections would support chronic pain complaints. However, the diagnoses asserted by you on appeal of myofascial pain, abdominal adhesions, right ovarian cyst, pudendal neuropathy, vestibulitis of the vulva, pelvic pain, dyspareunia, and abdominal pain are not diagnoses that would preclude outlined work activities either singularly or in aggregate. Additionally, multiple diagnoses have been provided not based on abnormal clinical testing (e.g., EMG/NCS of the pudendal nerves to explore pudendal neuropathy, abnormal CT of the abdomen to explore abdominal pain etc.) but rather in response to Ms. Covill's ongoing reports of pain. Inconsistent with an intraabdominal

8

etiology for Ms. Covill's pain, a February 19, 2021, abdominal exam found normal bowel sounds, no distention and no mass, no hepatosplenomegaly, no abdominal tenderness, rebound or CVA tenderness. No recent recommendation for general surgery exploration to evaluate adhesions, and no recent GI consultations or admissions for severe impairing GI pain. For patients with myofascial pain, work activities are encouraged, not discouraged. Vestibulitis of the vagina and dyspareunia would not be expected to impair work activities.

The appeals physician noted when treatment for Ms. Covill's pelvic pain did not resolve the pain reports, then other alternative etiologies were explored to include her back (which did not identify severe pathology radiographically or clinically to explain symptoms) and did not result in lumbar epidural steroid injections, lower extremity EMG/NCS or diagnostic/therapeutic blocks to explore back pain complaints. Although straight leg raises were noted to be positive bilaterally on May 13, 2021, the file information does not support that Ms. Covill has serially positive myotomal motor changes, dermatomal sensory changes, or reflex changes to support impairing back pain.

Likewise, the appeals physician opined Ms. Covill's hips (which per the appeal narrative from Dr. Westermann "may be" part of her pain) do not explain all of her pain reports/clinical presentations. Ms. Covill's hip x-rays demonstrate minimal changes. There were no severe results beyond labral tears on MRI. Although femoral acetabular impingement has been documented, there has been no recommendation for osteotomy.

Although Ms. Covill was found to have hip labral tears, this would not be expected to impair patients from frequent sitting, occasional standing, walking, and stooping. The evaluations by Dr. Peterson and Dr. Westermann (December 2020 and March 2021 respectively) were obtained only after Ms. Covill's pelvic pain was not well explained by the clinical information and her response to treatment.

(*Id.* at 126-27.)

The physician also considered Covill's use of medication and opined that:

the file information is insufficient to support that Ms. Covill has impairing medication side effects. A February 8, 2021, note from OB states that her

9

current "concoction" of cyclobenzaprine, Hydromorphone, Zofran, and Benadryl is working better than anything else in the past. Ms. Covill also notes that she went through her primary care physician and has been using some medical marijuana. When she uses marijuana Ms. Covill reports only needing 4 milligrams of hydromorphone instead of 6 milligrams. Physical examinations note Ms. Covill to be alert and in no acute distress. This presentation of pharmaceutic regiment that is working better than anything in the past, and her ability to remain alert would not support impairing medication side effects. A February 19, 2021, office visit with Dr. Sagers also notes no medication side effects and Ms. Covill was alert and in no distress. Thus, serially, Ms. Covill does not evidence cognitive impairment from medications or chronic pain.

(*Id.* at 127.)

Further, the physician considered Covill's clinical treatment and determined that:

Covill's serial clinical presentations have not evidenced severe impairing pain, her serial clinical presentations have not evidenced severe difficulties with sitting/standing or walking. She does not have Trendelenburg gait. Ms. Covill has had ample time to pursue intervention/treatment for her hips having initially been seen by orthopedics in December 2020. The records indicate that she will pursue ovarian and abdominal adhesion surgery. However, there are no current indications that Ms. Covill has pursued these interventions as would be expected if pain reports were severe.

(*Id.* at 127-28.)

While her claim was on appeal, Covill, again, provided additional information to Unum, and, once again, Unum forwarded this information to the appeals physician for review. The physician opined that:

[A]lthough Ms. Covill has had reports of chronic pain, the sites of her pain are not consistent from provider to provider or visit to visit. Sites of pain have included the pelvic floor, abdomen, back, SI joints, hips, and others.

An office note[] dated June 30, 2021, with Dr. Deniz (Neuro) document[ing] a physical examination found 5/5 bilateral lower extremity strength. Steady gait, no sway with Romberg, with a benign neurologic exam with pain unlikely to be of neuropathic origin. It was opined that

complaints do not seem to be originating from cord compression or plexopathy process as strength, sensation and reflexes are bilaterally intact. In summary, the physical/neurologic examination is not consistent with a severe lumbosacral spine condition, lumbosacral plexopathy, myopathy, or a diffuse large fiber peripheral polyneuropathy that would preclude outlined activities. There are no serial myotomal motor changes, dermatomal sensory changes, or reflex changes to support a significant lumbosacral radiculopathy. Occasional notes document positive straight leg raising, but this is not a consistent finding in the record.

Ms. Covill has a history of hip pain with femoroacetabular impingement and a labral tear, hip pain in this setting is typically worse with prolonged standing and walking rather than frequent sitting. Despite a diagnosis of hip labral tear and femoroacetabular impingement that ultimately required surgical intervention in 2021, the contemplated occupation above documents frequent sitting and only occasional standing and occasional walking. Her reports of hip pain were not prevalent during the interval between November 2019 through November 20, 2020. As of November 20, 2020, during a second GYN opinion with Dr. Mazur, she was referred for orthopedic consult to evaluate her hip complaints. Her initial visit with Dr. Westermann was March 2021, which is inconsistent with severe pain during the interval August 27, 2019, through February 22, 2020. It would be expected with severe/impairing hip pain beginning in 2019 that she would have pursued treatment sooner than a year after onset of symptoms. Ms. Covill's hip diagnoses would not preclude sustaining work activities identified above, and the serial clinical examinations fail to identify severe pain during sitting/standing/walking activities.

The appeals physician noted Ms. Covill has a history of chronic pelvic pain with pelvic floor/vaginal tenderness, and despite numerous interventions both conservative and invasive including physical therapy, injections, TENS unit etc., there have not been significant, durable improvements in chronic pelvic pain complaints. There is no consensus among treating providers regarding the etiology of her chronic pelvic pain. Chronic pelvic pain should not preclude Ms. Covill from sustaining activities noted above.

Abdominal wall pain is noted in the reviewed record with tenderness noted on examinations, but Ms. Covill has not had severe weight loss, serial GI evaluations or other GI treatment consistent with this being an impairing

problem. Diagnostic studies including electrodiagnostics, x rays, MRIs and labs fail to identify severe pathology that would preclude outlined activities.

Our appeals physician noted Ms. Covill's level of alertness is typically alert and oriented, in no acute distress. If she had severe hip, back, pelvic, abdominal, or other chronic pain, then one would not expect numerous providers to outline her as being in no acute distress and vital signs to document a lack of physiologic findings consistent with severe chronic pain (no consistent severe hypertension or tachycardia documented). . . .

Dr. Kline noted in March 2020 that her abdominal adhesions were beyond his area of expertise and sounded like she "is trying to get LTD and she received some communication in the mail stating she was not seeking appointments based on her pain." The intensity of treatment with pain management is less than what would be expected given the severity of her chronic and persistent complaints despite treatment with physical therapy, trigger point injections and pudendal nerve blocks.

In March 2021, Dr. Westermann opined she had complex issues with pain including intraabdominal adhesions and lumbar stenosis/discs that are causing her difficulty to sort out her pain. To date, no treating provider has been able to identify primary etiologies for her clinical presentation. Dr. Westermann's recent opinion that Ms. Covill's hip pain/labral tear has more likely than not been present since 2019 is not disputed (as Ms. Covill reported right hip pain in November 2019), however, she did not seek treatment until November 2020, which would not correlate with a severe or impairing hip condition.

(*Id.* at 128-29.)

Unum also responded to Covill's arguments on appeal. Unum noted that:

In your March 8, 2021, appeal letter you advised that Dr. Olson's assessment of Ms. Covill's impairments document her functional limitations. As outlined in our appeals physician's May 3, 2021, medical review, outlined above, the diagnostic testing, physical examinations, and functional information does not preclude Ms. Covill from performing the demands of her occupation. While we acknowledge Ms. Covill has complaints of abdominal and pelvic pain, the diagnostic testing does not identify a condition that would support pain so severe it would preclude

work activity. Additionally, Ms. Covill's medical documentation indicates she is not in any distress, which is inconsistent with severe pain. Our appeals physician completed multiple reviews of the medical documentation and there are no restrictions and limitations that would preclude her from occupational demands.

(*Id.* at 130.) Unum also addressed the opinions of Covill's vocational consultant:

You assert that the employment assessment confirms that Ms. Covill is unable to perform the duties of her occupation. You submitted an assessment from vocational consultant Ms. Barbara Laughlin. Ms. Laughlin opines that Ms. Covill is incapable of performing her former occupation of a dental hygienist as defined in the national economy. She outlines this because of the reported likelihood that Ms. Covill would miss two to three days of work per week, the limiting effect that her pain medications had on her ability to drive preventing her from traveling to and from work, administering anesthetic injections, her need to alternate between sitting, standing, and walking as defined by her, and her need to lie down for at least 15-20 minutes.

Ms. Covill's medical records do not reflect that there is any reason she would need to miss two to three days of work per week, nor do they reflect that Ms. Covill suffers from any medication side effects. Ms. Laughlin further indicates that Ms. Covill also would also no longer be able to perform the temperaments associated with the dental hygienist job such as performing detailed and precise work, the inability to work with co-workers and patients, and the inability to form judgements or make decisions. As outlined in the multiple medical reviews outlined above, we acknowledge Ms. Covill's pain, however her medical records do not document that she is in acute distress at any time and her diagnostic testing has not provided a diagnosis that would contribute to the pain level that she is in. Additionally, Ms. Covill's medical records do not support an inability to form judgements or make decisions. In fact, Ms. Covill's serial behavioral health examinations cite intact judgment and insight as well as remote and recent memory. This would suggest that Ms. Covill's pain level does not impact her ability to form judgements or make decisions and it is unclear why Ms. Covill would be unable to work with co-workers or patients.

(*Id.* at 130-31.) Additionally, Unum addressed Covill's vocational consultant's criticism of Unum's use of the eDOT, Enhanced Dictionary of Occupational Titles, a disability determination tool created by the Economic Research Institute:

> In your March 8, 2021, appeal letter, you detail that Ms. Laughlin is critical of the Benefits Center's Vocational Rehabilitation Consultant's report. You cite that the Benefits Center's Vocational Consultant did not use appropriate sources of information in her report taking objection to the use of the eDOT, which Ms. Laughlin states in not readily accessible to all vocational consultants. Additionally, Ms. Laughlin states that the Benefits Center's Vocational Consultant misidentifies the definition of light work and that it is important to look at both the weight lifted and posture. Ms. Laughlin reportedly spoke with Mr. Zach Heyer of ERI who denied the definition of light work as described by the Benefits Center's Vocational Rehabilitation Consultant.
>
> Our appeals Vocational Rehabilitation Consultant reviewed Ms. Laughlin's report and outlined that the Dictionary of Occupational Titles (DOT) was last updated in 1991 and does not include specific measures for sitting and standing. The DOT relies on the category of work which includes standing and walking that is not specific to the occupation part of a broad range of requirements. The Enhanced Dictionary of Occupational Titles is updated quarterly and separates the definition of Light Work into a strength requirement (lifting, carrying, pushing, pulling) and measures sitting, standing, and walking separately. The additional vocational information does not alter the occupational identification or associated demands from the vocational review of January 10, 2020, and January 13, 2020, conducted by the Benefits Center.

(*Id.* at 131.) Next, Unum addressed Covill's vocational consultant's criticism of Unum's inclusion of frequent sitting in its definition of light work:

> You outline that our appeals Vocational Rehabilitation Consultant's report is in error in defining light work to include frequent sitting and Ms. Laughlin takes issue with the utilization of the Enhanced Dictionary of Occupational titles due to it being unavailable to others. You note that Ms. Laughlin spoke with Mr. Zach Heyer of ERI who stated that frequent sitting was not included in the ERI definition of light work. It remains our position

14

that the appeals Vocational Rehabilitation Consultant's review of Ms. Laughlin's report is accurate in describing the demand level required of Ms. Covill's occupational duties. Ms. Laughlin continues to assert her position advising us of her discussion with Mr. Heyer, but does not provide any documentation directly from him to support his statement.

Further, you state that our appeals Vocational Rehabilitation consultant did not address restrictions because none were provided to him. Mr. O'Kelley's evaluation was conducted before our appeals physician's review of Ms. Covill's medical documentation and he appropriately deferred any restrictions and limitations to the physician. As our appeals physician did not find support for restrictions and limitations, no further vocational analysis was required. Neither a Functional Capacity Evaluation or an Independent Medical Evaluation were recommended by our appeals physician because the medical documentation was sufficient to evaluate Ms. Covill's medical capacity and neither evaluation would provide an accurate reflection of Ms. Covill's medical condition back to the time period in question of August 2019. . . .

As outlined above our appeals physician's review did not support restrictions and limitations that would preclude her ability to work in her light duty occupation as a dental hygienist. In your December 13, 2021, correspondence you provided an Employability Assessment by Barbara Laughlin asserting that Ms. Covill is not able to perform sedentary or light work, and, in fact, is limited to less than sedentary capacity. Ms. Covill's medical documentation does not support this statement. While you submitted a BLS Occupational Requirements Survey that states 79.8% of civilian dentists are not given a choice of sitting or standing in the performance of their occupation. We disagree. As outlined by the Vocational Rehabilitation Consultant assessment in Ms. Covill's claim file, the occupational duties as performed in the national economy, consists of frequent sitting. We maintain that our definition of the light duty work is accurate and appropriately reflects the occupation as performed by dental hygienists in the national economy, which is how the policy defines regular occupation.

(*Id.* at 132-34.)

Unum also addressed multiple criticisms lodged by Covill regarding Unum's review of Covill's medical history and record as follows:

> You also assert that Ms. Covill's medical records provide substantial evidence of her ongoing chronic pain. Again, we acknowledge that Ms. Covill has pain for which she has continued to seek treatment. However, the treatment modalities she has utilized, including physical therapy, pudendal nerve area injections, trigger point injections, and prescription pain medications, has not resulted in reports of pain relief. Her medical records do not clearly document a cause for her pain and numerous providers have not been able to identify an etiology for her pain. We agree that Ms. Covill has a labral tear which was evident on diagnostic testing, however this would not preclude her from performing the duties of her occupation as outlined above. . . .
>
> We received your June 7, 2021, correspondence in which you state that multiple diagnoses support Ms. Covill's chronic pain. In this letter you state that our appeals physician indicated that Ms. Covill is not disabled because there is no unifying diagnosis to explain her symptoms. We disagree with your assertion. While Dr. Gendron indicated there isn't a unifying diagnosis amongst Ms. Covill's treating providers, it is Ms. Covill's medical documentation including her diagnostic testing that does not support she is disabled. Ms. Covill's pain is acknowledged, however there are inconsistencies in Ms. Covill's reports of the location of the pain, the diagnostic testing has not identified a source of her pain outside of femoroacetabular impingement and a labral tear, hip pain in this setting is typically worse with prolonged standing and walking rather than frequent sitting. These conditions would not prevent Ms. Covill from working. Ms. Covill first sought treatment for hip pain in November 2020, which is almost one year after she reported complaints of this pain.
>
> You outline that variable pain locations do not discredit Ms. Covill's pain reports. We have acknowledged Ms. Covill's ongoing chronic pain complaints and have noted that the treatment she has undergone has not found her any relief. Ms. Covill has currently found a concoction of medications, without reported side effects, that has given her a level of pain relief not previously found.

You assert that Ms. Covill's pain complaints are documented by physical exam findings and her medical records are replete with exam findings that document severe pain reports. You further state that Dr. Olson confirms that trigger point injections document pain and the absence of a response by Ms. Covill signifies only that her nerves were not responsive to the injection or the nerves were not the only source of her pain. Again, we are not saying Ms. Covill doesn't have complaints of pain, it is our opinion that the level of pain reported is inconsistent with her reports and available medical documentation. She demonstrates no distress when she is in the office with multiple medical providers. If Ms. Covill was experiencing severe pain, one would expect that her medical records accurately reflect the pain in which she is reporting while at her physicians' offices. The Benefits Center as well as the Appeals Department relies upon medical documentation to accurately reflect what is reported during her appointments.

In your letter you outline Dr. Westermanns' statement of "positive SLR bilaterally" reflects signs of low back pain or nerve/back issues. He also states that her gait testing results do not contradict her chronic hip pain. Our appeals physician noted the bilateral straight leg raise statement but found this was not a consistent finding in her medical records. Our appeals physician also noted the office visit with Dr. Deniz on June 30, 2021, which found 5/5 bilateral lower extremity strength, a steady gait, no sway with Romberg, with a benign neurologic exam with pain unlikely to be of a neuropathic origin. He also opined the complaints do not seem to be originating from cord compression or plexopathy process as strength, sensation, and reflexes are intact on bilateral sides. The physical/neurologic examination is not consistent with a severe lumbosacral spine condition, lumbar plexopathy, myopathy, or diffuse large fiber peripheral polyneuropathy that would preclude [her from occupational demands]. . . .

We received your August 13, 2021, letter in response to our July 9, 2021, correspondence. This letter asserts that Ms. Covill suffers from chronic pelvic pain and Dr. Olson articulates why Ms. Covill's pelvic pain is disabling. Our multiple medical reviews on appeal have consistently demonstrated that Ms. Covill's pain complaints are acknowledged, but do not support that she would be incapable of working. Our appeals physician reviewed all of Ms. Covill's medical documentation, provided by Ms.

Covill's treating providers, related to her complaints of pain, and has rendered an opinion that he is capable of assessing based on his education, training and experience. Ms. Covill's continued pursuit of treatment for her severe pain does not provide insight into her restrictions and limitations back to August 2019. . . .

You outline that our appeals physician states that Ms. Covill failed to pursue treatment for more than a year. We understand that the pandemic impacted Ms. Covill's ability to secure appointments that later resulted in the diagnosis of a labral tear. However, the medical records available for November 2019 through November 2020 did not document findings that would have limited Ms. Covill's ability to perform her occupation. The exams failed to identify severe pain during sitting, standing, and walking activities. Additionally, you outline that our appeals physician noted that Ms. Covill's pelvic pain did not preclude activities. Ms. Covill's reports of chronic pelvic pain and her treating providers' opinions have been considered. While Ms. Covill reports chronic pain, the examination findings and diagnostic testing do not otherwise document findings that are consistent with occupationally precluding restrictions or limitations.

You assert, again, that our appeals physician stated that Ms. Covill's providers failed to identify severe hip, back, pelvic, and abdominal chronic pain. We disagree. We do not dispute Ms. Covill reports chronic pain; however, those reports are not consistently reported across providers or time. The inconsistent reporting of chronic pain in combination with the exam findings and testing does not result in findings to support Ms. Covill's reported pain is disabling.

(*Id.* at 131-34.)

Additionally, Unum noted that even though Covill was awarded benefits through the Veteran's Administration, Unum's "determination of benefit eligibility is based on the provisions of Ms. Covill's Long Term Disability policy and it is likely the eligibility rules of the Veteran's Administration vary from those of Ms. Covill's policy." (*Id.* at 131.)

18

Unum also addressed Covill's activities of daily living:

> You state that Ms. Covill's reported activities do not mean she is able to work. We disagree. A person's reported daily activities and the extent to which they are able to complete them, is an accurate representation of the retained functional capacity with which someone is capable of performing on a sustained basis. Mr. Covill demonstrated the ability to clean when she needed to and she was able to sit for a seven-hour period of time regardless of whether she was driving. This is consistent with her ability to perform the duties of her occupation which requires frequent sitting.

(*Id.* at 133.)

> Unum concluded that:

> Based on the multiple medical reviews conducted on appeal, it is our conclusion that the Benefits Center's decision to deny benefits is appropriate. Ms. Covill's medical documentation does not preclude her from performing the duties of her occupation. She was not disabled during the elimination period beginning August 26, 2019, as required by her employer's Long Term Disability policy.

(*Id.* at 135.)

### D.    *Covill's Pertinent Medical Evidence*

In a response to Unum, dated February 6, 2020, Covill's treating OBGYN, Dr. Joy Olson, M.D., reported that Covill was capable of performing the following on a full-time basis:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly to lift, carry, push, pull, or otherwise move objects, frequent sitting, occasional standing, walking and stooping.

(Doc. 10-3 at 248.) Dr. Olson explained that Covill had no lifting restrictions, however, "because of intermittent pain she is not comfortable working on patients while using sharp instruments." (*Id.*) Dr. Olson also noted that Covill's "[p]ain is random and severe at times" and she also has "headaches with elevated blood pressure." (*Id.*) Further, Dr.

Olson noted that Covill was being treated with physical therapy for pelvic pain and had a goal of returning to work by April 1, 2020. (*Id.* at 249.)

On February 10, 2020, Dr. Olson provided Unum with a revised response to Unum's questionnaire. Dr. Olson asserted that Covill was not capable of full-time employment "at this time." (*Id.* at 333.) Specifically, Dr. Olson opined that Covill "is not able to sit for any length of time without having sharp 'electrical like' shocks to her vaginal area and inner thighs and buttocks." (*Id.*) Dr. Olson noted that "[p]ain at times causes [Covill] to double over making it not safe to work on patients while using sharp instruments in their mouths." (*Id.* at 333-34.) Dr. Olson stated that Covill's return to work was "unknown at this time." (*Id.* at 334.)

On February 27, 2020, Dr. Olson opined that Covill was unable to work and had not been able to work since August 27, 2019. (*Id.* at 391.) Dr. Olson indicated that she had consulted with Covill's pain specialist and physical therapist. (*Id.*) Dr. Olson noted that Covill "has several types of pain," but the "one that has made it difficult for her to work [is] the sudden, sporadic, intermittent, 10/10 intense shooting abd[ominal]/pelvic pain that causes her to double over." (*Id.*) Dr. Olson stated that such pain "is a concern if she has sharp instruments in a patient's mouth." (*Id.*) Lastly, Dr. Olson noted that Covill uses a special cushion when sitting for pain control. (*Id.*)

On October 10, 2020, Dr. Olson filled out another questionnaire from Unum. Dr. Olson diagnosed Covill with dyspareunia, vestibulitis of the vulva, pelvic pain, and abdominal pain. (Doc. 10-4 at 224.) Dr. Olson noted abdominal pain to palpation, painful bimanual examination, and spasm/tight muscles on vaginal exam. (*Id.*) In response to Unum's question, "What objective tests, e.g., diagnostic imaging, documents Ms. Covill's sever pelvic/abdominal pain complaints?", Dr. Olson responded:

> None. [Covill's] pelvic [ultrasound] has shown cyst on [her] ovary. Adhesions are not something that can be seen on imaging.

(*Id.*)  Dr. Olson stated that Covill is a "credible reporter of her symptoms." (*Id.*)  Dr. Olson opined that Covill is "unable to attend work on a regular basis" and is likely to miss two to three days of work per week because when her "pain intensifies it would be difficult for [Covill] to focus [and] physically perform her job." (*Id.* at 225.)  Further, Dr. Olson opined that Covill's pain medication reduces her ability to concentrate and impacts her ability to work. (*Id.*)  Dr. Olson also noted that Covill would have difficulties working with co-workers and patients due to her severe pain, as the pain makes it difficult for Covill to concentrate and "be empathic." (*Id.*)  Dr. Olson opined that Covill would need to be able to alternate between sitting, standing, or walking as needed. (*Id.* at 226.)  Lastly, Unum asked Dr. Olson:

> Ms. Covill has undergone several different types of treatment, including physical therapy, trigger point injections and prescription medications. According to the insurance company's denial of her disability benefits, Ms. Covill's treatment has not been consistent with her stated symptom severity. Do you agree with this assessment?

(*Id.*)  Dr. Olson responded, "No. [Covill] has done everything we asked her to do. This is a chronic condition that flares at times." (*Id.*)  On November 6, 2020, in response to a single question from Unum, Dr. Olson opined that, "at times," Covill "may need" to lie down for 15-20 minutes as needed during a typical eight-hour workday to relieve her pain. (*Id.* at 229.)

On June 3, 2021, Dr. Robert Westermann, M.D., one of Covill's treating physicians, returned a questionnaire from Unum regarding Covill's hip pain.  Dr. Westermann opined that Covill's right hip pain "may be a part of her pain, but all her pain is not coming from her hip." (Doc. 10-7 at 366.)  Dr. Westermann indicated that, because of her chronic hip pain, Covill must alternate between sitting, standing, and walking as needed. (*Id.* at 367.)  Dr. Westermann stated that, during a typical workday, Covill would not need to lie down 15-20 minutes at a time as needed. (*Id.*)  Dr.

Westermann also reported that he could not state that Covill's diagnosis of "chronic bilateral, right greater than left hip pain," applied retroactively to August 2019. (*Id.*)

In April 2020, Covill's treating pain doctor, Dr. Mark D. Kline, M.D., provided Unum with a letter which stated in part:

> Unfortunately, [Covill] continues to experience severe pain related to abdominal wall adhesions and intrapelvic adhesions. She has followed my treatment recommendations as best she was able. Treatment options such as physical therapy, injection procedures, and repeat surgery are currently on hold due to the COVID-19 pandemic. With regards to work restrictions and ability to work, I would refer to Dr. Joy Olson's evaluation given her multiple and ongoing visits with [Covill].

(Doc. 10-4 at 92.)

### E.    Covill's Vocational Consultant

On March 5, 2021, Covill's vocational consultant, Barbara Laughlin, provided an "Employability Assessment" for Covill. In her assessment, Laughlin opined that Covill "is precluded from her past work as [a] dental hygienist as it is performed in the national economy." (*Id.* at 247.) Further, Laughlin opined that Covill's "restrictions are so severe that she is unable to perform any work without significant accommodations, which are not likely to be provided by an employer." (*Id.*) Laughlin explained that:

> It is my opinion Ms. Covill is unable to participate in competitive employment due to her limitations. She would require significant accommodation, and even so, would likely miss 2-3 days of work per week. She would be unable to even commute to work if she was taking hydromorphone or any of her prescription medication for at least four hours after taking that medication. She needs to alternate between sitting, standing and walking as needed and determined by her pain and lie down during the workday. These are significant accommodations that would preclude her being hired as a dental hygienist or in any other employment.

(*Id.*)

On December 13, 2021, Laughlin provided a second "Employability Assessment" for Covill. In her second assessment, Laughlin noted that on October 10, 2020, Dr. Olson opined that Covill must alternate between sitting, standing, and walking as needed and as determined by Covill. (Doc. 10-11 at 383.) Laughlin noted that on June 3, 2021, Dr. Westermann also recommended that Covill be allowed to alternate between sitting, standing, and walking as needed. (*Id.*) According to statements provided by Covill she can sit for 1-8 minutes at a time, stand for 3 minutes at a time, and walking is uncomfortable. (*Id.* at 384.) Based on the foregoing information from Covill and Drs. Olson and Westermann, Laughlin opined that:

> Ms. Covill can neither sit, nor stand/walk for any significant periods of time. Due to her very limited ability to stand and walk, the sedentary base is eroded.
>
> Work as a dental hygienist is described as light exertional level work by the Dictionary of Occupational Titles. She is unable to stand/walk 66% of the workday as required by the definition and thus cannot perform light exertional level work. She is unable to stand/walk even 33% of the day, as required by the definitions of sedentary work, and cannot perform that exertional level. Work processes in specific jobs determine how long an individual would be on their feet in sedentary work. An inability to stand/walk to perform even these tasks would render and individual unable to perform at the sedentary level.

(*Id.*) Lauglin concluded that Covill "is unable to return to work as a dental hygienist and would be functioning at a less than sedentary level." (*Id.* at 385.)

F.    *Covill's Statement*

In an affidavit, Covill described suffering from "lightning pain" shooting through her pelvic and abdominal area. (Doc. 10-6 at 371.) Covill states that the pain is so severe that she is "forced to stop talking just to deal with the pain." (*Id.*) She rated her pain at 9 on a 10-point scale when she has "lightning pain." (*Id.*) Covill also described

"constant, aching pain throughout [her] pelvis and wrapping around to [her] back." (*Id.*) She also described this type of pain as "stabbing, throbbing and burning pain." (*Id.*) Covill stated, "[w]hen I have this type of pain, I have to stop whatever I'm doing and just hold my stomach until the pain stops. At times the pain is so intense that I grasp my groin and stomach, hold myself in a fetal position, close my eyes and try to breath[e]." (*Id.*) Covill claimed that she is "in so much pain" that she would probably miss two to three days of work each workweek. (*Id.*) She stated that "[i]t would not be unusual for me to spend 5 days in a row in bed or sitting in the bathtub for 4 hours at a time to lessen the pain." (*Id.*) According to Covill, she does "very few household chores because of [her] pain," does some laundry, and rarely does any outdoor work. (*Id.* at 372.)

## IV.    ANALYSIS

### A.    Parties' Arguments

Covill argues that Unum's denial of LTD benefits is arbitrary and capricious. Specifically, Covill argues that Unum's determination to deny benefits based on a lack of a documented single unifying diagnosis is "unreasonable and not supported by substantial evidence." (Doc. 11 at 20.) Covill maintains that her "chronic pelvic pain identified by her multiple providers is the single, unifying diagnosis which accounts for the multiple causes of her chronic pelvic pain." (*Id.* at 21.) Covill also argues that Unum's "decision to deny benefits because Covill's pain reports were inconsistent with information from other sources is arbitrary and capricious." (*Id.* at 22.) Covill maintains that "reliance on her subjective severe pain reports, her exam records documenting severe pain, and the intensive therapy she received confirm the severity of her pain reports" and Unum's "decision to deny such evidence is unreasonable." (*Id.* at 24.) Covill contends that Unum's rejection of her "treating doctors' functional limitation[s] is arbitrary and capricious." (*Id.*) Covill points out that all her doctors "attributed her functional limitations to chronic, intense pain and/or medications used to treat such intense pain."

24

(*Id.* at 25.) Covill asserts that "[b]y relying on its own reviewing physicians' opinions which were in direct contrast to information provided by Ms. Covill's treating physicians, Unum abused its discretion to deny her benefits." (*Id.*) Additionally, Covill argues that Unum's "decision to discredit [her] vocational consultant's report is arbitrary and capricious." (*Id.*) Covill objects to Unum's definition of light work to include frequent sitting and argues that such a definition is inconsistent with both the eDOT, used by Unum, and the DOT, used by Covill's vocational consultant. (*Id.* at 25-26.) Covill maintains that her vocational consultant, relying on the correct definition of light work, correctly determined that Covill is unable to perform her occupation as a dental hygienist and Unum "abused its discretion by denying Ms. Covill's benefits." (*Id.* at 26-27.) Finally, Covill argues that Unum's "selective focus on evidence underlying Ms. Covill's claim for benefits is arbitrary and capricious." (*Id.* at 27.) Specifically, Covill argues that Unum "focused on certain evidence," taking a seven-hour car trip, failing to seek prompt treatment, refusal to follow medication increases as directed by her doctors, refusing to undergo additional surgery, and performing housework, "to uphold its denial of benefits" and "ignor[ing] her response to the evidence," is arbitrary and capricious. (*Id.*)

Unum argues that its "finding that [Covill's] physical ailments do not prevent her from performing the material and substantial duties of her regular occupation is supported by substantial evidence." (Doc. 14 at 9.) Unum notes that, while Covill discusses various physical ailments in her brief, she focuses her argument on her reported pain and "does not appear to contend that the physical conditions she outlines at all limit her physical ability to perform the tasks [of her regular occupation]." (*Id.* at 13.) Next, Unum argues that its "finding that [Covill's] reported pain does not prevent her from performing the material and substantial duties of her regular occupation is supported by

substantial evidence." (*Id.*) Finally, Unum argues that its "vocational findings are supported by substantial evidence." (*Id.* at 16.)

**B.    *Standard of Review***

Pursuant to ERISA, a party may bring a lawsuit to recover benefits under an employee welfare benefit plan. *See* 29 U.S.C. § 1132(a)(1). In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the United States Supreme Court, recognizing that the ERISA statute does not provide a standard of review, held that, in actions challenging the determination of eligibility for benefits, where the benefit plan confers discretionary authority to the plan administrator to determine eligibility for benefits, the plan administrator's decision is given deference and is reviewed under an abuse of discretion standard. *Id*. at 115-16. The abuse of discretion standard of review is extremely deferential and reflects the "general hesitancy to interfere with the administration of a benefits plan." *Norris v. Citibank, N.A. Disability Plan (501)*, 308 F.3d 880, 883 (8th Cir. 2002) (quoting *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998)). Thus, pursuant to the "'abuse of discretion standard of review, [a court] do[es] not substitute [its] own weighing of the evidence for that of the administrator.'" *McIntyre v. Reliance Standard Life Ins. Co.*, 73 F.4th 993, 1000 (8th Cir. 2023) (quoting *Gerhardt v. Liberty Life Assur. Co. of Boston*, 736 F.3d 777, 780 (8th Cir. 2013)). "Under an abuse of discretion standard of review, a plan administrator's decision will stand if reasonable; 'i.e., supported by substantial evidence.'" *Id*. (quoting *Fletcher-Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1179 (8th Cir. 2001)); *see also McIntyre*, 73 F.4th at 1000 ("Under abuse-of-discretion review, we reverse the plan administrator's decision only if it was arbitrary and capricious, meaning it was unreasonable or unsupported by substantial evidence.").

The court must affirm the plan administrator's decision "if a reasonable person *could* have reached a similar decision, given the evidence before him [or her], not that a

reasonable person *would* have reached that decision." *Prezioso v. Prudential Ins. Co. of Am.*, 748 F.3d 797, 805 (8th Cir. 2014) (quoting *Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002)). "Any reasonable decision will stand, even if the court would interpret the language differently as an original matter." *Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1038 (8th Cir. 20210). A decision is reasonable if it is supported by substantial evidence. *See Wilcox v. Liberty Life Assurance Co. of Boston*, 552 F.3d 693, 700 (8th Cir. 2009). Substantial evidence is "more than a scintilla, but less than a preponderance." *Id*. (quoting *Clapp v. Citibank, N.A. Disability Plan (501)*, 262 F.3d 820, 828 (8th Cir. 2001)); *see also Ortlieb v. United HealthCare Choice Plans*, 387 F.3d 778, 781 (8th Cir. 2004) ("Substantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion") (quotation omitted). Additionally, when the plan administrator is both the decision maker and the insurer, a conflict of interest exists which the court must take "into account and give it some weight in the abuse-of-discretion calculation." *Carrow v. Standard Ins. Co.*, 664 F.3d 1254, 1259 (8th Cir. 2012). "Only when the evidence relied on is overwhelmed by contrary evidence may the court find an abuse of discretion." *McIntyre*, 73 F.4th at 1000 (quoting *Whitley v. Standard Ins.*, 815 F.3d 1134, 1142 (8th Cir. 2016).

## C.     *Application*

Unum's use of the eDOT and generic discussion of its use in its appeal decision as it pertains to the definition of "light work" creates a conundrum for the Court. Covill maintains that Unum incorrectly included "frequent sitting" within its definition of light work, impermissibly relying on the eDOT instead of the DOT definition of light work. (Doc. 11 at 25-26.) Further, Covill asserts that her vocational expert corresponded with the publishers of the eDOT and the publisher informed Covill's vocational expert that Unum' inclusion "frequent sitting" for light work is inconsistent with the eDOT. (*Id.* at 26.)

27

In its appeal decision, Unum addressed Covill's concern as follows:

> Ms. Covill's claim file was forwarded to our Appeals Vocational
> Rehabilitation Consultant with regard to the light occupational demand level
> and the utilization of the eDOT. This reviewer noted, in part, the DOT
> relies on the category of work which includes standing and walking that is
> not specific to the occupation part of a broad range of requirements. The
> Enhanced Dictionary of Occupational Titles is updated quarterly and
> separates the definition of Light work into a strength requirement (lifting,
> carrying, pushing, or pulling) and measures sitting, standing, and walking
> separately. The additional vocational information does not alter the
> occupational identification or associated demands from the [initial]
> vocational review conducted by the Benefits Center.

(Doc. 10-12 at 124.) Unum's vocational expert indicated that she relied on the eDOT
and determined that Covill was capable of "light work" which included:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of
> force frequently, and/or negligible amount of force constantly to lift, carry,
> push, pull, or otherwise move objects, frequent sitting, occasional standing,
> walking and stooping.

(Doc. 10-2 at 60.) Unum's vocational expert defined "frequently" as 2.5 to 5.5 hours
per day in a typical eight-hour workday. (*Id.*) In its brief Unum asserts:

> Both [Covill's] retained vocational consultant and Unum Life's Appeals
> Vocational Rehabilitation Consultant agree [Covill's] regular occupation as
> a dental hygienist is "light" work. [Covill] takes issue with Unum Life's
> evaluation of the demands of her occupation as a dental hygienist as
> requiring frequent sitting. However, there is no question Unum Life's
> evaluation is supported by substantial evidence in the record. While
> [Covill's] retained vocational consultant reached a different conclusion,
> Unum Life did not abuse its discretion in relying on the vocational analysis
> it received from its Appeals Vocational Rehabilitation Consultant.

(Doc. 14 at 16.) Unum's brief offers no further argument on this issue. Unum's brief
fails to explain how its definition of light work is supported by substantial evidence.
Unum's brief does not address Covill's argument that the inclusion of "frequent sitting"

in Unum's definition "light work" is not supported by the DOT or the eDOT. Unum's appeal decision also glosses over this issue, stating that the eDOT "measures sitting, standing, and walking separately," without ever explaining how it measured or determined that Covill's job included frequent sitting or that frequent sitting is part of the definition of light work.

The DOT provides that the strength requirement for a dental hygienist is "light work." *See* DOT 078.361-010.[3] The DOT defines "light work" as follows:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT, Appendix C.[4] Nothing about the DOT definition of "light work" includes frequent sitting. Because the Court lacks access to the eDOT and Unum failed to provide the eDOT's definition of "light work" as it pertains to sitting requirements, the Court is unable to adequately review Unum's appeal decision. While Unum provided a detailed appeal decision, the decision provides no details as to its understanding of "light work," including frequent sitting, for its determination that Covill was capable of performing her

---

[3] https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT01B (accessed on June 25, 2024).

[4] https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC (accessed on June 25, 2024).

job as a dental hygienist. Unum was aware that Covill disagreed with its finding of "light work," including frequent sitting, yet failed to address the issue. Stating "there is no question Unum Life's evaluation is supported by substantial evidence in the record" without providing a single piece of evidence makes it impossible for a reviewing court to determine whether Unum's reasoning is reasonable or unreasonable. I also note that neither party provided a functional capacity evaluation or independent medical exam. According to the appeal decision, Unum's vocational rehabilitation consultant, who reviewed Covill's case prior to appeals physician's review of Covill's case, deferred any restrictions or limitations to the reviewing physician. At best, it is difficult to understand how a vocational consultant can provide an accurate opinion without knowing the claimant's functional restrictions. This difficulty cuts both ways, as neither party provided a functional assessment for Covill. In the appeal decision, Unum essentially concludes "no harm, no foul," because its reviewing physician found no restrictions or limitations for Covill. Unum concludes that "[w]e maintain that our definition of light duty work[, which includes frequent sitting for a dental hygienist,] is accurate and appropriately reflects the occupation as performed by dental hygienists in the national economy." Again, this conclusion is contradicted by the DOT's definition of light work as it applies to dental hygienists. *See* DOT 078.361-010, DOT Appendix C. Even though this conclusion is contradicted by the DOT, the Court cannot say that Unum's reliance on the eDOT explains that contradiction or is reasonable or unreasonable because Unum has provided no details about the eDOT. Wholly absent is the relevant text of the eDOT and any attempt at analysis. Additionally, relevant to the considerations here, Unum is the plan administrator and is both the decision maker and the insurer, thus a conflict of interest exists which must be taken into account and weighed in determining the appropriate outcome. *See Carrow*, 664 F.3d at 1259. Thus, based on the foregoing, I cannot make a recommendation for an ultimate resolution based on the record before me.

Under these circumstances, I believe that remand for further development of the record with regard to the eDOT definition of "light work," including whether such designation includes frequent sitting, discussion of why and how the eDOT definition applies to Covill, and determination of whether a functional capacity evaluation and/or independent medical examination is appropriate and necessary.[5]

In general, "[a] reviewing court must remand a case when the court or agency fails to make adequate findings or explain the rationale for its decision," including in ERISA cases. *Abram v. Cargill, Inc.*, 395 F.3d 882, 887 (8th Cir. 2005), *superseded by regulation on other grounds in Midgett v. Wash. Group Int'l Long Term Disability Plan*, 561 F.3d 887 (8th Cir. 2009); *see also Harden v. Am. Express Fin. Corp.*, 384 F.3d 498, 500 (8th Cir. 2004) (per curiam) (remanding case to plan administrator where plan failed to obtain and consider records which plan informed claimant that it intended to consider); *Gaither v. Aetna Life Ins. Co.*, 394 F.3d 792, 809 (10th Cir. 2004) (remanding case to plan administrator to reconsider its decision in light of the entire record and obtain additional information necessary to determine the plaintiff's eligibility for benefits); *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996) (providing that remand is an appropriate remedy in an ERISA case "unless the case is so clear cut that it would be unreasonable for the plan administrator to deny the application for benefits on any ground"); *Arn v. Life Insurance Company of North America*, No. 4:17-cv-00797-FJG, 2018 WL 3973073, at *4 (W.D. Mo. June 13, 2018) ("A remand to the plan administrator is appropriate wen the administrator has failed to make an adequate finding or adequately explain its reasoning.").

---

[5] The Court acknowledges that Covill has raised other issues that potentially could be reviewed by the Court based on the record available in this case, but those issues may be affected by whether "light work" for a dental hygienist involves frequent sitting or not and whether one or both of the parties were to obtain a functional capacity evaluation or independent medical examination on remand.

Based on all the foregoing, I recommend that this case be remanded for further development of the record.

## V.    CONCLUSION

For the reasons set forth above, I respectfully **recommend** the District Court **remand** this matter to the Plan Administrator for further development of the record. (Doc. 1.)

Objections to this Report and Recommendation in accordance with 28 U.S.C. Section 636(b)(l) and Fed. R. Civ. P. 72(b) must be filed within fourteen (14) days of the service of a copy of this Report and Recommendation.  Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections.  *See* Fed. R. Civ. P. 72.  Failure to object to the Report and Recommendation waives the right to *de novo* review by the district court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein.  *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**IT IS SO ORDERED** this 16th day of July, 2024.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa

32